938 So.2d 1172 (2006)
STATE of Louisiana, Appellee,
v.
Gary RANKIN, Appellant.
No. 41,128-KA.
Court of Appeal of Louisiana, Second Circuit.
August 23, 2006.
*1174 Paula Corley Marx, Laura M. Pavy, Louisiana Appellate Project, for Appellant.
J. Schuyler Marvin, District Attorney, John M. Lawrence, John W. Montgomery, Assistant District Attorneys, for Appellee.
Before BROWN, STEWART and GASKINS, JJ.
GASKINS, J.
The defendant, Gary Rankin, entered an Alford plea[1] to attempted second degree murder and was sentenced to 50 years at hard labor without benefit of probation, parole or suspension of sentence. He appeals. We affirm.

FACTS
On April 5, 2003, the defendant, age 20, went to the nursing home where his former girlfriend, the victim in the instant case, was employed. When she refused to reconcile with him, he pulled a gun from his waistband and shot her in the back of the head. The 19-year-old victim subsequently died.
The defendant was indicted for second degree murder. Following his request for a sanity commission, two of the three doctors on the commission opined that the defendant was competent to proceed. The trial court ruled that the defendant was competent to stand trial and assist his counsel.
The defendant was allowed to enter an Alford plea to attempted second degree murder. The trial court imposed a sentence of 50 years at hard labor without benefit of probation, parole or suspension of sentence. The defendant filed a motion to reconsider which asserted that his sentence was excessive due to his youth, mild retardation, and status as a first felony offender. The motion was denied.

CAPACITY TO PROCEED
The defendant claims that the trial court erred in finding that he was competent to proceed when the court was presented with conflicting evidence in the reports *1175 submitted by the members of the sanity commission. He argues that the trial court should not have adopted Dr. George Seiden's conclusion "in the face of the more compelling [Dr. Mark] Vigen report." The defendant contends that his "lack of remorse" could denote mental difficulties in recalling and relating facts "pertaining to his actions and whereabouts at certain times." The state responds that it was not just Dr. Seiden who found the defendant competent to stand trial, but Dr. Paul Ware as well. The state notes that the defendant did not object to the ruling of competency at the guilty plea hearing.

Law
A criminal defendant has a constitutional right not to be tried while legally incompetent. A state must observe procedures adequate to protect a defendant's right not to be tried while incompetent, and its failure to do so deprives the defendant of his due process right to a fair trial. Medina v. California, 505 U.S. 437, 449, 112 S.Ct. 2572, 2579, 120 L.Ed.2d 353, 365-66 (1992) [quoting Drope v. Missouri, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975)]; State v. Carmouche, XXXX-XXXX (La.5/14/02), 872 So.2d 1020.
Louisiana's statutory scheme for detecting mental incapacity jealously guards a defendant's right to a fair trial. State v. Nomey, 613 So.2d 157 (La.1993). In Louisiana, "[m]ental incapacity to proceed exists when, as a result of mental disease or defect, a defendant presently lacks the capacity to understand the proceedings against him or to assist in his defense." La. C. Cr. P. art. 641; see also Nomey, supra. The law also imposes a legal presumption that a defendant is sane and competent to proceed. La. R.S. 15:432; State v. Martin, XXXX-XXXX (La.9/22/00), 769 So.2d 1168.
The defendant has the burden of proving by a preponderance of the evidence his incapacity to stand trial. State v. Frank, 96-1136 (La.10/4/96), 679 So.2d 1365 [citing Cooper v. Oklahoma, 517 U.S. 348, 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996)]. A reviewing court owes the trial court's determinations as to the defendant's competency great weight, and the trial court's ruling thereon will not be disturbed on appeal absent a clear abuse of discretion. State v. Bridgewater, XXXX-XXXX (La.1/15/02), 823 So.2d 877, cert. denied, 537 U.S. 1227, 123 S.Ct. 1266, 154 L.Ed.2d 1089 (2003).
In State v. Bennett, 345 So.2d 1129, 1138 (La.1977), the Louisiana Supreme Court set forth the considerations necessary in determining whether a defendant is fully aware of the proceedings against him:
The decision as to a defendant's competency to stand trial should not turn solely upon whether he suffers from a mental disease or defect, but must be made with specific reference to the nature of the charge, the complexity of the case and the gravity of the decisions with which he is faced. Appropriate considerations in determining whether the accused is fully aware of the nature of the proceedings include: whether he understands the nature of the charge and can appreciate its seriousness; whether he understands what defenses are available; whether he can distinguish a guilty plea from a not guilty plea and understand the consequences of each; whether he has an awareness of his legal rights; and whether he understands the range of possible verdicts and the consequences of conviction. Facts to consider in determining an accused's ability to assist in his defense include: whether he is able to recall and relate facts pertaining to his actions and whereabouts at certain times; whether he is able to assist counsel in locating and examining *1176 relevant witnesses; whether he is able to maintain a consistent defense; whether he is able to listen to the testimony of witnesses and inform his lawyer of any distortions or misstatements; whether he has the ability to make simple decisions in response to well-explained alternatives; whether, if necessary to defense strategy, he is capable of testifying in his own defense; and to what extent, if any, his mental condition is apt to deteriorate under the stress of trial. [Citations omitted.]

Discussion
The defendant filed an application for appointment of a sanity commission on December 29, 2003. The trial court appointed Drs. George Seiden and Mark Vigen to examine the defendant's mental condition. Dr. Seiden concluded that while the defendant's intelligence was below average (estimated IQ of 70), he was able to consult with his attorney "with a reasonable degree of rational understanding." Dr. Seiden opined that the defendant understood the charges, was aware of the nature of the proceedings, understood possible verdicts and consequences of conviction, could assist in preparing or maintaining a defense, and could testify in his own defense if necessary. Dr. Seiden wrote that the defendant's condition was "not likely to deteriorate significantly under the stress of trial." Dr. Vigen approximated that the defendant had an IQ of 65, and stated that, in his opinion, the defendant was not at that time competent to stand trial because he failed the Georgia Court Competency Test with no evidence of malingering.
On May 3, 2004, the trial court appointed Dr. Paul Ware to prepare a sanity report. No copy of Dr. Ware's report is included in the record, but at the sanity hearing held on October 8, 2004, both the prosecution and defense counsel agreed that Dr. Ware had opined that the defendant was competent to stand trial. Based on the experts' opinions, the trial court found the defendant competent to stand trial.
There is no showing that the trial court abused its discretion in this ruling. The defendant had the burden of proving incapacity to stand trial, and the trial court appointed a sanity commission at his request. Two of the three appointed experts found that the defendant was capable of understanding the proceedings and assist in his defense. Dr. Seiden's report detailed many of the considerations that the Louisiana Supreme Court set forth in Bennett, supra, as determining factors in deciding whether a defendant is fully aware of the proceedings against him. As the defendant failed to rebut the presumption of sanity by proving incapacity by a preponderance of the evidence, this assignment is without merit.

EXCESSIVE SENTENCE
The defendant argues that the imposition of the maximum sentence possible under the plea agreement was constitutionally excessive, citing his age, "otherwise clean criminal record," and "compromised mental ability." The state argues that the defendant received considerable benefit from the reduced charge under the plea agreement, that the trial court clearly considered many factors in determining the appropriate sentence, and that the sentence imposed was not excessive.

Law
Whoever commits the crime of second degree murder shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. La. R.S. 14:30.1. As second degree murder is a crime punishable by life imprisonment, a person guilty of attempting *1177 to commit that crime shall be imprisoned at hard labor for not less than 10 nor more than 50 years without benefits. La. R.S. 14:27(D)(1)(a).
In reviewing claims of excessive sentence, an appellate court uses a two-step process. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not a rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). A trial judge shall exercise his sentencing discretion to impose sentences according to the individualized circumstances of the offense and the offender. State v. Rogers, 405 So.2d 829 (La.1981). In tailoring the sentence to the individual, the important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La. 1981); State v. Bradford, 29,519 (La. App.2d Cir.4/2/97), 691 So.2d 864.
Second, whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const. art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Bradford, supra.
As a general rule, maximum or near maximum sentences are reserved for the worst offenders and the worst offenses. State v. Robinson, 36,147 (La.App.2d Cir.12/11/02), 833 So.2d 1207. However, in cases where the defendant has pled guilty to an offense which does not adequately describe his conduct, the general rule does not apply and the trial court has great discretion in imposing the maximum sentence possible for the pled offense. This is particularly true in cases where a significant reduction in potential exposure to confinement has been obtained through a plea bargain and the offense involves violence upon a victim. State v. Black, 28,100 (La.App.2d Cir.2/28/96), 669 So.2d 667, writ denied, 96-0836 (La.9/20/96), 679 So.2d 430.

Discussion
The defendant was indicted for second degree murder, a crime which carries a mandatory sentence of life imprisonment without benefits. He pled guilty to attempted second degree murder which has a sentencing range of 10 to 50 years imprisonment at hard labor without benefits. Therefore, the plea agreement resulted in a significant reduction in the time of potential imprisonment.
At the sentencing hearing, the victim's mother said that her daughter had been completing entrance exams to join the U.S. Army the same week that she was shot in the back of the head by the defendant. She spoke of the hardships of seeing her child at the hospital, "hooked onto these respirators and all of this."
According to the facts revealed at sentencing, the defendant and the victim dated for approximately five years before *1178 breaking off the relationship. The defendant went to the nursing home where the victim was employed to attempt to reconcile. When the victim refused and turned away from him, the defendant told her, "If I can't have you, nobody will have you." He then pulled a revolver from the waistband of his pants and shot her in the back of the head. He confessed to police that he had shot and killed the victim. During the presentence investigation, the defendant said that it had been an "accidental discharge." The defendant stated at the sentencing hearing that "what happened was an accident." The defense counsel urged the trial court to consider that the defendant was mentally retarded and had no prior criminal record. The trial court stated that the defendant needed to be imprisoned to protect society and not for rehabilitation. The defendant was sentenced to 50 years at hard labor without benefits.
Our review of the record reveals that the trial court adequately complied with La. C. Cr. P. art. 894.1. The defendant went to the victim's workplace and shot her in the back of the head when she refused to resume their prior relationship. The sentence is not grossly disproportionate to the severity of the offense of conviction nor does it shock the sense of justice. The defendant was greatly benefited by the plea agreement and the reduction of the original charge.
This assignment of error is without merit.

ERROR PATENT
The defendant requested that the record be reviewed for errors patent. This request is unnecessary since such a review is made automatically in all criminal cases. State v. Bryant, 29,344 (La. App.2d Cir.5/7/97), 694 So.2d 556. Our review reveals none.

CONCLUSION
The defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).