950 So.2d 140 (2007)
STATE of Louisiana, Appellee
v.
Henry DUPREE, Appellant.
No. 41,658-KA.
Court of Appeal of Louisiana, Second Circuit.
January 31, 2007.
*142 G. Paul Marx, Lafayette, for Appellant.
Jerry L. Jones, District Attorney, Stephen T. Sylvester, Assistant District Attorney, for Appellee.
Before WILLIAMS, GASKINS and SEXTON (Pro Tempore), JJ.
WILLIAMS, J.
A Ouachita Parish grand jury returned an indictment charging the defendant, Henry Dupree, with aggravated rape, a violation of LSA-R.S. 14:42. Following a trial, a jury convicted the defendant of the responsive verdict of forcible rape. The defendant was adjudicated a second felony habitual offender, and the trial court sentenced him to serve 50 years in prison without benefit of suspension of sentence or the accrual of good time credit, with credit for time served. The defendant now appeals. For the following reasons, we affirm the defendant's conviction. However, we vacate the defendant's sentence and remand this matter for a determination of the portion of the sentence to be served without benefit of parole or probation.

FACTS
During the early morning hours of June 22, 1995, R.B.G.[1] was asleep in the home she shared with her daughter, niece and foster child in Ouachita Parish when "something" awakened her. From the bed she was sharing with her ailing foster child, R.B.G. opened her eyes and saw an unknown nude black male standing in the doorway of her bedroom. After the intruder moved out of the doorway, R.B.G. looked for the telephone she always kept on the table next to her bed, but the telephone was not there. R.B.G. then got up to check on her daughter and niece, who were asleep in a nearby bedroom. As R.B.G. reached for the doorknob to pull the children's bedroom door closed, she was approached by the intruder, who grabbed her arm and pulled her down the hallway toward the living room. R.B.G. testified that she could only see one of the intruder's hands at all times and believed he had a weapon. The intruder repeatedly admonished R.B.G. not to look at him. He then ordered her to remove her t-shirt and sweat pants, but before she could comply, he removed her underwear and sweat pants. He pushed her onto the living room floor and performed oral sexual intercourse on her. The assailant then climbed on top of R.B.G. in a missionary position. R.B.G. could not recall whether or not the assailant had vaginal sexual intercourse with her. R.B.G. testified that she was never verbally threatened by her *143 assailant, and she did not see a weapon in his hands. However, she stated that she only acquiesced because she felt physically threatened and feared for her life and the lives of the children. R.B.G. also stated that she did not push the perpetrator away or scream because she thought he would kill her and her children. Throughout the attack, R.B.G. asked her assailant, "Why are you doing this?" However, he did not answer.
After the attack, the assailant left the living room and entered the kitchen where he dressed and then fled through the kitchen door. R.B.G. used the kitchen telephone to call the police. She looked for but could not find the telephone she always kept near her bed.
Deputy Mickey Watts of the Ouachita Parish Sheriff's Office responded to the call and interviewed R.B.G. Deputy Watts testified at trial after refreshing his memory by looking over his police report. He testified that R.B.G. told him that an intruder performed oral sex upon her and raped her. Over the defense's hearsay objection, Deputy Watts was allowed to testify that the victim related to him that the perpetrator threatened to choke her. R.B.G. was then transported to a local hospital for a rape examination.
The registered nurse who assisted in the rape examination stated that R.B.G. appeared to be in shock and "cried an awful lot." The nurse testified at trial that she was present and witnessed the collection of the evidence by use of a rape kit, which included "private vaginal area and hair and scrapings from the skin, oral swabs, vaginal swabs, [and] rectal swabs."
R.B.G. was subsequently unable to identify her assailant during a photographic line-up, and no suspect was apprehended immediately following the crime. However, at trial, R.B.G. made an in-court identification of the defendant as the man who raped her.
Less than one year after R.B.G.'s attack, the defendant was arrested for aggravated burglary, and subsequent deoxyribonucleic acid ("DNA") testing linked him to the rape of R.B.G. In the early morning of May 22, 1996, R.H. was asleep in her bed with her young sons when she was awakened by the feel of an unknown man's head touching her inner thighs. The man was an uninvited intruder into the home R.H. shared with her mother and sons in Ouachita Parish. R.H. told the unarmed man that he had to leave and she pushed him. The man got off of R.H. and ran out of her bedroom, but returned to her bedroom doorway. R.H. pushed the man against the wall and ran screaming into her mother's room to awaken her. The man then left their home. R.H.'s mother looked for the telephone in the kitchen to alert the authorities. The telephone's receiver was missing, so she used the telephone in another bedroom. The receiver was later discovered under the sofa. R.H. did not get a good look at the intruder because she never saw him in the light, but described him to police and in court as a black male who was a little taller than her and had brown skin. The man was wearing short pants and had a white t-shirt in his hand.
A short time after being notified of the crime, the police K-9 unit apprehended a man fitting the description given by R.H. The man, who was later identified as the defendant, was hiding on top of an abandoned house. The defendant was wearing boxer shorts and his short pants were located on top of the house. He was arrested for the charge of aggravated burglary. After being Mirandized, the defendant refused to answer questions and would not explain why he fled from the police officers and was outside in his boxer shorts at that time of the morning. During *144 a subsequent photographic line-up R.H. was unable to identify the defendant as her assailant.
As the result of a cooperative investigation between the Ouachita Parish Sheriff's Office and the Monroe Police Department, the defendant was developed as a suspect in the rape case with regard to R.B.G. because of the similarities with the aggravated burglary. An order was obtained and blood was drawn from the defendant for DNA testing. The DNA analysis expert compared the DNA sample drawn from the defendant to the DNA sample (sperm fraction) on the vaginal swab from R.B.G.'s rape kit and confirmed that the DNA from both samples were consistent. The DNA expert determined the probability of another African American possessing the same combination of genetic markers was one in 2.2 trillion.
The defendant was charged by grand jury indictment with the crime of aggravated rape. At arraignment, the defendant entered a dual plea of not guilty and not guilty by reason of insanity. A Sanity Commission was appointed by the trial court. On May 3, 2001, the trial court found the defendant incompetent to proceed or assist counsel and ordered him committed to the Feliciana Forensic Facility. After a status hearing, on August 29, 2003, the trial court ordered the defendant to be returned to the Feliciana Forensic Facility. On October 18, 2004, after reviewing the physician's report, the trial court found the defendant competent to stand trial (and would be allowed to testify, but would not be subject to cross-examination), and a trial date was set. At a hearing conducted on October 5, 2005, the defendant's request for the impaneling of a fourth Sanity Commission was denied, and the defendant was again found competent to assist counsel.
Prior to trial, the state filed a notice of intent to use evidence of other crimes/acts. After a pretrial Prieur hearing, the trial court ruled that the testimony of R.H. would be allowed, but that the testimony of another witness, E.B., would not be allowed. After completion of a trial by jury, the defendant was found guilty of the responsive verdict of forcible rape.
The state filed a habitual offender bill against the defendant. A habitual offender hearing was held and the defendant was adjudicated a second felony habitual offender.[2] The defendant was sentenced to serve 50 years' imprisonment at hard labor without benefit of suspension of sentence or the accrual of good time credit. He received credit for time served. The defendant appeals his conviction.
Sufficiency of Evidence
In his first assignment of error, the defendant contends the evidence was insufficient to support his conviction because there was no evidence of penetration, an essential element of the crime of rape. The defendant also points out that the amendments to the rape statutes, adding oral sexual intercourse to the crime of rape, occurred in 2001 and were not in effect when the instant offense took place.
Although the record does not reflect that the defendant filed a motion for post-verdict judgment of acquittal pursuant to LSA-C.Cr.P. art. 821, this court will consider sufficiency of the evidence arguments in the absence of such a motion. State v. Henson, 38,820 (La.App. 2d Cir.9/22/04), 882 So.2d 670; State v. Green, 28,994 (La.App. 2d Cir.2/26/97), 691 So.2d 1273.
*145 When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App. 2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
This standard, now legislatively embodied in LSA-C.Cr.P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App. 2d Cir.8/30/02), 827 So.2d 508, writ denied, XXXX-XXXX (La.11/14/03), 858 So.2d 422.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La.App. 2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Allen, 36,180 (La. App. 2d Cir.9/18/02), 828 So.2d 622, writs denied, 2002-2595 (La.3/28/03), 840 So.2d 566, 2002-2997 (La.6/27/03), 847 So.2d 1255, cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004).
In the absence of internal contradiction or irreconcilable conflict with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. White, 28,095 (La.App. 2d Cir.5/8/96), 674 So.2d 1018, writ denied, 96-1459 (La.11/15/96), 682 So.2d 760, writ denied, 98-0282 (La.6/26/98), 719 So.2d 1048. This is equally applicable to the testimony of victims of sexual assault. State v. Ponsell, 33,543 (La.App. 2d Cir.8/23/00), 766 So.2d 678, writ denied, 2000-2726 (La.10/12/01), 799 So.2d 490; State v. Robinson, 36,147 (La.App. 2d Cir.12/11/02), 833 So.2d 1207. Despite absence of scientific evidence of sexual intercourse, the testimony of the victim can be sufficient to establish sexual penetration. State v. Wallace, XXXX-XXXX (La.App. 5 Cir. 5/16/01), 788 So.2d 578, writ denied, XXXX-XXXX (La.5/24/02), 816 So.2d 297. Also see State v. Pontiff, 604 So.2d 71 (La.App. 3d Cir. 1992); State v. Peters, 441 So.2d 403 (La. App. 4 Cir.1983), writ denied, 530 So.2d 560 (La.1988).
*146 At the time of the offense, June 22, 1995, LSA-R.S. 14:41 defined rape as follows:
A. Rape is the act of anal or vaginal sexual intercourse with a male or female person committed without the person's lawful consent.
B. Emission is not necessary and any sexual penetration, vaginal or anal, however slight is sufficient to complete the crime.
Forcible rape was defined in LSA-R.S. 14:42.1 as "a rape committed where the anal or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape."[3]
When viewed in the light most favorable to the prosecution, we find the evidence was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of the crime of forcible rape. Although the victim could not recall whether the defendant penetrated her vagina with his penis, the rape examination revealed evidence of vaginal penetration. A certified copy of the rape kit examination was admitted into evidence and stated:
SPERMATOZOA WERE DETERMINED TO BE PRESENT IN THE VAGINAL SWAB (10-1). THE DNA TYPING RESULTS FROM ITEM 10-1 (MALE FRACTION) DETERMINED THAT THE DNA WAS CONSISTENT WITH THE GENETIC MARKERS FOUND IN THE REFERENCE BLOOD OF HENRY LEE DUPREE, JR. ITEM 10. THE POSSIBILITY THAT ANOTHER BLACK INDIVIDUAL COULD HAVE THIS COMBINATION OF GENETIC MARKERS IS APPROXIMATELY 1 IN 2.2 TRILLION.
An expert in DNA analysis testified that DNA extracted from a vaginal pool sample, vaginal swab and vaginal washings would be taken from inside the vaginal cavity, not from the outside of the vagina.
This argument lacks merit.
In a separate assignment of error, the defendant contends it was reversible error to allow the police officer who took the initial report of R.B.G.'s rape to testify from his report that the victim had told him the defendant had threatened her. According to the defendant, the state obtained testimony regarding threats to the victim by using the hearsay testimony of the officer. The defense argues that the testimony was prejudicial because it "replaced" the victim's actual testimony for the benefit of the state's case.
Deputy Watts testified that he had not reviewed his report until he talked to the prosecutor about the case on the day of trial. Stating that he had since "looked over" his report, Deputy Watts testified regarding the facts he learned during the investigation. Specifically, over the defense's hearsay objection, Deputy Watts was allowed to testify that the victim related to him that the perpetrator threatened to choke her. Deputy Watts was cross-examined by the defense regarding details of the investigation, including the victim's *147 description of the perpetrator, the fact that there was no evidence of a weapon and the lack of physical injuries.
Hearsay is defined as a "statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." LSA-C.E. art. 801(C). Generally, such out-of-court statements are inadmissible. LSA-C.E. art. 802; State v. Logan, 36,042 (La.App. 2d Cir.6/14/02), 822 So.2d 657, writ denied, 2002-2174 (La.9/19/03), 853 So.2d 621. Investigative police reports are inadmissible hearsay. LSA-C.E. art. 803(8)(b)(i); State v. Black, 2003-911 (La.App. 5 Cir. 12/30/03), 864 So.2d 836; State v. Berkeley, XXXX-XXXX (La.App. 5 Cir. 5/30/01), 788 So.2d 647, writ denied, XXXX-XXXX (La.4/26/02), 814 So.2d 549. The admission of even hearsay testimony is harmless error where the effect is merely cumulative or corroborative of other testimony adduced at trial. State v. Johnson, 389 So.2d 1302 (La.1980); State v. McIntyre, 381 So.2d 408, 411 (La.1980), cert. denied, McIntyre v. Louisiana, 449 U.S. 871, 101 S.Ct. 209, 66 L.Ed.2d 90 (1980).
In general, a defendant's right to confront his accusers is satisfied if hearsay evidence has sufficient guarantees of trustworthiness to come within a firmly rooted exception to the hearsay rule. State v. Marston, XXXX-XXXX (La.3/16/01), 780 So.2d 1058; White v. Illinois, 502 U.S. 346, 358, 112 S.Ct. 736, 743, 116 L.Ed.2d 848 (1992).[4]
LSA-C.E. art. 803 provides in pertinent part:
The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
* * *
(5) Recorded recollection. A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in his memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence and received as an exhibit but may not itself be taken into the jury room. This exception is subject to the provisions of Article 612.
* * *
In State v. Murray, 36,137 (La.App. 2d Cir.8/29/02), 827 So.2d 488, writ denied, 2002-2634 (La.9/5/03), 852 So.2d 1020, two police officers testified at a trial in 2001 with regard to an investigation of a shooting which had taken place in 1978. This court rejected the defendant's argument that the officers' statements were inadmissible under LSA-C.E. art. 803(8)(b)(i), stating:
In the present case, [the police officers] were present and testified at trial. They admitted having insufficient recollection of the 1978 incident to testify *148 fully and accurately. Then, each officer used his report, which was shown to have been made by him when the matter was fresh in his memory and was shown to reflect that knowledge correctly. This use of the report is an exception to the hearsay rule under La. C.E. art. 803(5) as a recollection recorded.
In the instant case, the police officer's report was not admitted into evidence nor was it read during his testimony. Thus, by "looking over" his 1995 report just prior to trial, the police officer's use of the report, which was apparently made by him when the events were fresh in his memory, was simply to refresh his memory of the incident that occurred almost a decade earlier. As in Murray, supra, the police officer was present and testified at trial, including testimony on cross-examination by the defense. Thus, we conclude that the police officer's testimony was admissible under the LSA-C.E. art. 803(5) recorded recollection exception to the hearsay rule.
Capacity to Proceed
In another assignment of error, the defendant argues the trial court erred in concluding that he had the capacity to proceed to trial despite the defendant's history of schizophrenia and the physicians' statement that the defendant could not function under cross-examination. The defendant summarizes his history of mental commitments and notes that there is no indication in the record that the defendant has been "cured." According to the defendant, his testimony at the hearing was "a rambling, disconnected jumble of facts and confusion."
A criminal defendant has a constitutional right not to be tried while legally incompetent. A state must observe procedures adequate to protect a defendant's right not to be tried while incompetent, and its failure to do so deprives the defendant of his due process right to a fair trial. Medina v. California, 505 U.S. 437, 449, 112 S.Ct. 2572, 2579, 120 L.Ed.2d 353, 365-66 (1992) [quoting Drope v. Missouri, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975)]; State v. Carmouche, XXXX-XXXX (La.5/14/02), 872 So.2d 1020.
Louisiana's statutory scheme for detecting mental incapacity jealously guards a defendant's right to a fair trial. State v. Nomey, 613 So.2d 157 (La.1993). In Louisiana, "[m]ental incapacity to proceed exists when, as a result of mental disease or defect, a defendant presently lacks the capacity to understand the proceedings against him or to assist in his defense." LSA-C.Cr.P. art. 641; see also Nomey, supra. The law also imposes a legal presumption that a defendant is sane and competent to proceed. LSA-R.S. 15:432; State v. Martin, XXXX-XXXX (La.9/22/00), 769 So.2d 1168; State v. Rankin, 41,128 (La.App. 2d Cir.8/23/06), 938 So.2d 1172.
The defendant has the burden of proving by a preponderance of the evidence his incapacity to stand trial. State v. Frank, 96-1136 (La.10/4/96), 679 So.2d 1365 [citing Cooper v. Oklahoma, 517 U.S. 348, 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996)]. A reviewing court owes the trial court's determinations with regard to the defendant's competency great weight, and the trial court's ruling thereon will not be disturbed on appeal absent a clear abuse of discretion. State v. Bridgewater, XXXX-XXXX (La.1/15/02), 823 So.2d 877, cert. denied, 537 U.S. 1227, 123 S.Ct. 1266, 154 L.Ed.2d 1089 (2003); State v. Rankin, supra.
In State v. Bennett, 345 So.2d 1129, 1138 (La.1977), the Louisiana Supreme Court set forth the considerations necessary in determining whether a defendant is fully aware of the proceedings against him:

*149 The decision as to a defendant's competency to stand trial should not turn solely upon whether he suffers from a mental disease or defect, but must be made with specific reference to the nature of the charge, the complexity of the case and the gravity of the decisions with which he is faced. Appropriate considerations in determining whether the accused is fully aware of the nature of the proceedings include: whether he understands the nature of the charge and can appreciate its seriousness; whether he understands what defenses are available; whether he can distinguish a guilty plea from a not guilty plea and understand the consequences of each; whether he has an awareness of his legal rights; and whether he understands the range of possible verdicts and the consequences of conviction. Facts to consider in determining an accused's ability to assist in his defense include: whether he is able to recall and relate facts pertaining to his actions and whereabouts at certain times; whether he is able to assist counsel in locating and examining relevant witnesses; whether he is able to maintain a consistent defense; whether he is able to listen to the testimony of witnesses and inform his lawyer of any distortions or misstatements; whether he has the ability to make simple decisions in response to well-explained alternatives; whether, if necessary to defense strategy, he is capable of testifying in his own defense; and to what extent, if any, his mental condition is apt to deteriorate under the stress of trial.
(Internal citations omitted).
With regard to the self-incrimination issue, the courts have been in general agreement, although the view is subject to critical comment, that the privilege against self-incrimination does not apply against requiring the accused to participate in a sanity commission. The reasoning is often grounded upon a limited waiver of the privilege, for the limited purposes of the sanity commission. State v. Jones, 359 So.2d 95 (La.1978), cert. denied, 439 U.S. 1049, 99 S.Ct. 727, 58 L.Ed.2d 708 (1978).
In this case, at the sanity hearing held on November 15, 2004, Dr. Saxon Elliott, a clinical psychologist, testified that she was appointed to the sanity commission and had examined and administered psychological testing on the defendant on at least three occasions from April 2001 until October 2004. She determined that the defendant suffers from chronic paranoid schizophrenia. After the first two examinations, Dr. Elliott found the defendant incompetent to proceed to trial. However, after the October 2004 examination, Dr. Elliott noted that the defendant was responding to anti-psychotic medication and determined that the defendant was competent to stand trial. Counsel for the state questioned Dr. Elliott regarding the Bennett criteria for determining a defendant's ability to assist in his defense, and Dr. Elliott opined that this defendant met all of the factors under Bennett, with the exception of his ability to relate facts pertaining to his actions and whereabouts and his ability to be cross-examined. Although Dr. Elliott felt that the defendant might experience some difficulty under the rigors of cross-examination, she did not feel that he could not or should not testify.
Dr. Richard Y. Williams, an expert in psychiatry, testified at the sanity hearing that he examined the defendant on October 4, 2004 and diagnosed him as a schizophrenia paranoid type with an anti-social personality disorder. He determined that the defendant met all of the Bennett criteria, and opined that he could tolerate rigorous cross-examination as long as he is maintained on his medication. Dr. *150 Williams found the defendant mentally competent to stand trial, as well as competent at the time of the offense.
The parties stipulated that if the doctor from the forensic unit were called to testify, the testimony would be consistent with the report issued on August 3, 2004. The report included an opinion that the defendant was not competent to testify at trial.
The defendant testified at the sanity hearing against the advice of counsel and over counsel's objection. The trial court questioned the defendant and found his answers to be clear and responsive. He demonstrated an ability to think relevantly and articulate those thoughts. After hearing arguments, the trial court found the defendant competent to stand trial.
On October 5, 2005, a hearing was held on the defense counsel's motion for a fourth sanity commission. Defense counsel argued that the defendant had evidenced behavior indicating he would not be able to assist counsel in his defense. Specifically, the defendant did not want to call family members as witnesses, insisted on calling other crime victims as character witnesses, and refused to take his counsel's advice concerning trial. Defense counsel also contended that the defendant thought his own counsel was working with the state to convict him. It was noted that the defendant was not cooperative in taking oral medication, so injections were being administered. The defense counsel called the defendant as a witness, who answered his questions regarding the above allegations. An employee of the penal institution testified that the defendant has been "a gentleman," compliant and communicative since being maintained on his medicines by injection. The trial court denied the impaneling of a fourth sanity commission, citing the defendant's compliance with medication over the last year, lucid appearance, appropriate responses, adequate understanding of the proceedings and ability to assist defense counsel. The defense counsel's objection was noted for the record.
Essentially, the defendant's various complaints in this assignment of error address the single question of his capacity to stand trial, which was essentially controlled by whether the trial judge was correct when he ruled, following the sanity commission hearing, that defendant was capable of standing trial. Our review of the record supports the trial court's ruling that the defendant failed to meet his burden of proving by a preponderance of the evidence his incapacity to stand trial. Thus, we conclude that the trial court did not abuse its discretion in concluding that the defendant was competent to stand trial.
This assignment is without merit.

ERRORS PATENT
In accordance with LSA-C.Cr.P. art. 920, all appeals are reviewed for errors patent on the face of the record. A review of the record herein reveals one error patent. In sentencing the defendant, the trial court noted that the defendant is a second felony habitual offender and stated:
[Y]ou are sentenced to fifty years in prison at hard labor, that sentence is to be served without suspension of sentence and without good time. . . . You're to be given credit for time served against that fifty year sentence.
However, the trial court did not state how much of the defendant's sentence was to be served without benefit of parole or probation, as required by LSA-R.S. 14:42.1(B), which provides:
Whoever commits the crime of forcible rape shall be imprisoned at hard labor for not less than five years nor more *151 than forty years. At least two years of the sentence imposed shall be without benefit of probation, parole, or suspension of sentence.
While the trial court herein imposed the 50-year sentence "without suspension of sentence and without good time," it did not state how much of the sentence should be served without benefit of parole or probation. As noted above, LSA-R.S.14:42.1(B) specifically requires a portion of the sentence to be served "without benefit of probation, parole, or suspension of sentence." Therefore, we vacate the defendant's sentence and remand this matter for a determination of the portion of the sentence to be served without benefit of parole or probation. See, State v. Hopson, 39,570 (La.App. 2d Cir.4/6/05), 900 So.2d 237.

CONCLUSION
For the foregoing reasons, we affirm the defendant's conviction. His sentence is vacated and the matter is remanded to the trial court for resentencing as specified in this opinion.
CONVICTION AFFIRMED; SENTENCE VACATED; REMANDED.
SEXTON, J. (Pro Tempore), concurs.
NOTES
[1] The initials of the victims are used because of confidentiality requirements applicable to the instant case under La. R.S. 46:1844(W).
[2] The defendant had been convicted of forcible rape in 1982 and was sentenced to serve 20 years in prison. He was released from prison on May 26, 1994.
[3] At the time of the offense, LSA-C.Cr.P. art. 814(8) listed the responsive verdicts for aggravated rape as follows:

Guilty.
Guilty of attempted aggravated rape.
Guilty of forcible rape.
Guilty of attempted forcible rape.
Guilty of sexual battery.
Guilty of simple rape.
Guilty of attempted simple rape.
Not guilty.
[4] In Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the Supreme Court held that out-of-court statements by witnesses that are testimonial are barred, under the Confrontation Clause, unless the witnesses are unavailable and defendants had prior opportunity to cross-examine the witnesses, regardless of whether such statements are deemed reliable by the court. The Court further found a violation of the Confrontation Clause with regard to the admission of a wife's out-of-court statements to police officers regarding an incident in which the defendant, her husband, allegedly stabbed the victim. However, the instant case is distinguishable from Crawford. Unlike in Crawford, R.B.G., the person who supplied the out-of-court statements to Deputy Watts, was available to testify, and did, in fact, do so and was cross-examined by the defense.