MARC E. JOHNSON, Judge.
|2Pefendant, Marvin Robinson, appeals his conviction of simple burglary of a vehicle and his habitual offender sentence from the 24th Judicial District Court, Division “L”. For the following reasons, we affirm the conviction and habitual offender sentence.
FACTS AND PROCEDURAL HISTORY
*925 This is Defendant’s third appeal.[1] On April 27, 2005, the Jefferson Parish District Attorney’s Office filed a bill of information charging Defendant with simple burglary of a vehicle, a violation of LSA-R.S. 14:62. On August 21, 2008, after a one-day jury trial, Defendant was found guilty as charged. On October 17, 2008, the trial court imposed a sentence of 11 years at hard labor.
On the same day, the State filed a habitual offender bill of information alleging Defendant to be a third felony offender. Defendant denied the allegations in the habitual offender bill. After a hearing on December 12, 2008, the trial court found Defendant to be a third felony offender, vacated his original sentence, and | .^sentenced him to natural life at hard labor without benefit of parole, probation, or suspension of sentence.
On his first appeal, this Court vacated Defendant’s conviction, habitual offender adjudication, and sentence, finding that the trial court failed to make a determination of Defendant’s competency to stand trial; and, the case was remanded for a new trial. See, State v. Robinson, 09-371 (La.App. 5 Cir. 3/23/10); 39 So.3d 692, 704. The Louisiana Supreme Court reversed this Court’s ruling and remanded the matter to the trial court to determine whether a meaningful, retrospective competency hearing was possible. If possible, the hearing was to be conducted and the issue determined. State v. Robinson, 10-924 (La.12/17/10); 50 So.3d 156, 156-57.
On remand, the trial court found that Defendant was competent to stand trial and could assist his counsel during his trial held in August of 2008. This timely appeal follows.
The facts of this case were set forth in this Court’s opinion in Defendant’s first appeal. See, Robinson, 09-371; 39 So.3d at 694-95.
ASSIGNMENTS OF ERROR
In his present appeal, Defendant raises the following counseled and pro se assignments of error by alleging the trial court erred: 1) by imposing an excessive sentence; 2) denying his constitutional rights in violation of the 5th, 6th, and 4th Amendments of the United States and Louisiana Constitutions; and 3) denying his right to present a defense and his right to a fair trial.
LAW AND ANALYSIS

Excessive Sentence

Defendant argues that serving life for his simple burglary conviction shocks the conscience, thus his mandatory life sentence is constitutionally excessive.
|/The State responds that Defendant did not argue the excessive sentence issue on direct appeal. It further asserts that the Louisiana Supreme Court conditionally affirmed Defendant’s conviction and sentence, and remanded the case only for a competency determination. Therefore, it concludes that Defendant’s instant appeal should be limited to the issue addressed on remand. The State, nevertheless, addresses the merits and argues that the sentence was statutorily mandated, and Defendant has provided no evidence that a departure from the mandated sentence was warranted.
The record reflects that during the habitual offender sentencing, Defendant, through his counsel, objected to the life sentence as “overly harsh.” However, De *926 fendant failed to file an oral or written motion to reconsider sentence. In addition, this issue was not raised in brief in either the first or second appeals, which were consolidated.
Subsequent to this Court’s ruling and the Louisiana Supreme Court’s reversal, the case was remanded. The trial court retroactively found that Defendant was competent to stand trial. In response, Defendant filed a pro se notice of intent to appeal the trial court’s competency ruling. In an order dated March 24, 2011, the trial court considered Defendant’s notice of appeal as a notice of intent to seek writs and set a return date of April 25, 2011. On May 26, 2011, this Court granted Defendant’s writ application for the limited purpose of vacating the trial court’s ruling, finding that Defendant’s remedy was by an appeal, rather than by a writ application. This Court also asserted that, pursuant to the Louisiana Supreme Court’s per curiam opinion in State v. Robinson, 10-924 (La.12/17/10); 50 So.Sd 156, 157, and State v. Snyder, 98-1078 (La.4/14/99); 750 So.2d 832, Defendant’s [^appeal rights on his competency and other issues pretermitted in his earlier appeal were reserved. See also, State v. Robinson, 11-KH-448 (La.App. 5 Cir. 5/26/11).[2]
Because Defendant did not raise the constitutional excessiveness issue in his prior consolidated appeal, we decline to consider the issue raised in Defendant’s first counseled assignment of error.
In State v. Triche, 03-910 (La.App. 5 Cir. 12/30/03); 864 So.2d 832, writ denied, 03-1979 (La.1/16/04); 864 So.2d 625, the defendant was convicted of possession with intent to distribute marijuana, and after a habitual offender hearing, the trial court found the defendant to be a second felony offender, and imposed an enhanced sentence. The defendant appealed, but did not challenge his habitual offender adjudication or sentence. This Court affirmed the defendant’s conviction, but on error patent review, it vacated the defendant’s habitual offender sentence as illegal and remanded for re-sentencing. After the trial court re-sentenced the defendant, he filed a second appeal, claiming the trial court had erred in finding he was a habitual offender. This Court found the defendant was not entitled to review of his habitual offender proceeding on his second appeal because he had failed to challenge the trial court’s habitual offender finding in his first appeal. This Court reasoned, “[i]n our previous opinion, this Court affirmed the trial court’s habitual offender finding, vacated the original sentence, and remanded solely for re-sentencing. Defendant is, therefore, only entitled to raise issues pertaining to that re-sentencing.” Triche, 03-910; 864 So.2d at 834. Accordingly, this Court did not consider the defendant’s assignment of error.
|fiIn State v. Young, 08-387 (La.App. 5 Cir. 9/16/08); 996 So.2d 302, 304-05, writ denied, 09-631 (La.1/8/10); 24 So.3d 863, the defendant did not file a motion to quash the habitual offender bill of information prior to his habitual offender hearing. Nor did he raise any issues concerning his habitual offender adjudication or sentence in his first appeal. Therefore, this Court found that the issues the defendant raised *927 in his second appeal were not properly before the Court. The court noted, “[i]n the first appeal, this Court affirmed defendant’s underlying conviction and tacitly affirmed defendant’s habitual offender adjudication and the matter was remanded for re-sentencing on the habitual offender adjudication. The only action the trial court had the authority to take on remand was to re-sentence defendant as a habitual offender, and defendant assigns no error regarding the re-sentencing.” Id.
Here, Defendant’s conviction and sentences were not specifically affirmed by the Louisiana Supreme Court, which make them distinguishable in that aspect. However, the validity of Defendant’s conviction was conditioned upon the trial court’s ability to retroactively determine Defendant’s competency to stand trial. Since Defendant was retroactively deemed competent to stand trial, Defendant’s conviction remained valid. Accordingly, we apply the premise set forth in Triche and Young, and find that in this current appeal, Defendant is restricted from raising the excessive sentence issue. This Court has also opined that Defendant’s appeal rights on the competency issue and other issues pre-termitted in his earlier appeal were reserved, which further infers that Defendant’s current appeal is limited to these issues only. See State v. Robinson, 11-KH-448 (La.App. 5 Cir. 5/26/11).
Based on the foregoing, we find that this assignment of error is not properly before us.
| tDenial of Constitutional Rights, Right to Present a Defense, and Right to a Fair Trial[3]
Defendant argues that the trial court erred in making a retroactive determination of competency in violation of his constitutional rights. In particular, he argues that it was impossible to hold a meaningful nunc pro tunc hearing because his history of mental illness, including schizophrenia and borderline intelligence, was not made part of the record; therefore, it was not considered by the sanity commission or the trial court. Second, Defendant maintains that had his history of mental illness been considered, he would not have been deemed competent to stand trial; thus, the competency ruling was erroneous. Defendant asserts that as a result of his mental illness, he did not possess a rational understanding of the proceedings and was forced to stand trial while incompetent. He contends that this error substantially impeded his right to present a defense and to a fair trial. Third, Defendant maintains that his trial counsel was ineffective because of his failure to submit his history of mental illness for consideration by the sanity commission and the trial court.
Significantly, Defendant cites to no authority which requires the sanity commission or the trial court to consider Defendant’s past mental health records in order to determine whether a retroactive ruling may be made on competency. Moreover, Defendant failed to offer any evidence that reflects he has a history of mental illness during the previous evaluation, trial, or the nunc pro tunc hearing.
“The trial court is in the best position to determine whether it can make a retrospective determination of defendant’s competency during his trial and sentencing.” Snyder, 98-1078; 750 So.2d at 855. “The state bears the burden to show the court that the tools of rational decision are available.” Snyder, 98-1078; 750 So.2d at 855. Whether a meaningful retroactive competency hearing can be held must be decided on a case by case basis. Snyder, 98-1078; 750 So.2d at 855.
*928 A meaningful determination is possible where the state of the record, together with such additional evidence as may be relevant and available, permits an accurate assessment of the defendant’s condition at the time of the original proceedings. Additionally, when determining whether a meaningful hearing may be held, the Court looks to the existence of contemporaneous medical evidence, the recollections of non-experts who had the opportunity to interact with the defendant during the relevant period, statements by the defendant in the trial transcript, and the existence of medical records. The passage of time is not an insurmountable obstacle if sufficient contemporaneous information is available. Snyder, 98-1078; 750 So.2d at 855. The testimony of doctors or mental health experts who conducted mental examinations close to the trial date increase the probability that the nunc pro tunc hearing will not be unduly speculative. Snyder, 98-1078; 750 So.2d at 855 n. 17(citation omitted).
In the instant case, the testimony of a mental health expert who conducted mental examinations close to the trial date and a corresponding report were available. In particular, the State elicited the testimony of Dr. Rafael Salcedo, who, along with Dr. Richard Richoux, evaluated Defendant on May 14, 2008, and recommended that he be deemed competent to stand trial. The State also admitted a May 14, 2008 report, which was prepared in conjunction with Defendant’s evaluation. When considering the totality of circumstances in the instant case, we find the State met its burden of proving that a meaningful determination of Defendant’s competency was possible.
Next, Defendant argues that the trial court’s ruling on competency was erroneous because neither the sanity commission nor the trial court considered his | ^mental health history. Again, Defendant cites to no authority which requires the sanity commission or the trial court to consider a defendant’s history of mental health in making a competency determination. See LSA-C.Cr.P. arts. 641-648. To the contrary, both the Louisiana Supreme Court and the Louisiana Second Circuit Court of Appeal have upheld the trial courts’ rulings on competency despite the fact that there was evidence of the defendants’ mental illness or borderline intelligence. See State v. Jones, 376 So.2d 125 (La.1979); State v. Dupree, 41,658 (La.App. 2 Cir. 1/31/07); 950 So.2d 140, writ denied,, 07-0439 (La.10/12/07); 965 So.2d 396, where the consideration of defendants’ past histories of schizophrenia did not warrant reversal of the trial courts’ determinations of defendants’ present competency to stand trial; and State v. Holmes, 06-2988 (La.12/2/08); 5 So.3d 42, cert. denied, — U.S. —, 130 S.Ct. 70, 175 L.Ed.2d 233 (2009), where the consideration of defendant’s past history of borderline intelligence did not warrant reversal of the trial court’s determination of defendant’s present competency to stand trial.
LSA-C.Cr.P. art. 641 provides that “[m]ental incapacity to proceed exists when, as a result of mental disease or defect, a defendant presently lacks the capacity to understand the proceedings against him or to assist in his defense.” (Emphasis added). Louisiana law presumes a defendant’s sanity. Therefore, the burden is upon the accused to establish by a preponderance of the evidence that the mental incapacity delineated in LSA-C.Cr.P. art. 641 exists. LSA-R.S. 15:432; Holmes, 06-2988; 5 So.3d at 54-55.
Although a trial court may receive expert medical testimony on the issue of a defendant’s competency to proceed to trial, the ultimate decision of capacity rests alone with the trial court. LSA-C.Cr.P. art. 647; Id. (citation omitted). A review- *929 mg court owes the trial court’s determination of a defendant’s mental Incapacity great weight, and its ruling should not be disturbed in the absence of manifest error. Id. (citations omitted).
In State v. Bennett, 345 So.2d 1129, 1138 (La.1977), this Court held that the appropriate considerations for determining whether the accused is fully aware of the nature of the proceedings include:
whether he understands the nature of the charge and can appreciate its seriousness; whether he understands what defenses are available; whether he can distinguish a guilty plea from a not guilty plea and understand the consequences of each; whether he has an awareness of his legal rights; and whether he understands the range of possible verdicts and the consequences of conviction.
Additionally, in determining an accused’s ability to assist in his defense, consideration should include:
whether he is able to recall and relate facts pertaining to his actions and whereabouts at certain times; whether he is able to assist counsel in locating and examining relevant witnesses; whether he is able to maintain a consistent defense; whether he is able to listen to the testimony of witnesses and inform his lawyer of any distortions or misstatements; whether he has the ability to make simple decisions in response to well-explained alternatives; whether, if necessary to defense strategy, he is capable of testifying in his own defense; and to what extent, if any, his mental condition is apt to deteriorate under the stress of trial.
Bennett, 345 So.2d at 1138 (citations omitted).
As noted in the previous appeal, the trial record does not reflect that Defendant filed a motion requesting a mental examination. However, both Defendant and the State stipulated in their former briefs that the defense requested a mental examination for Defendant, and the trial court ordered the mental examination and appointed a sanity commission to examine and report on the mental condition of Defendant pursuant to LSA-C.Cr.P. art. 644. Robinson, 09-371; 39 So.3d at 697.
On remand, the trial court held a nunc pro tunc competency hearing on February 16, 2011. Dr. Rafael Salcedo, an expert in forensic psychology, testified |nat the hearing. Dr. Salcedo evaluated Defendant on May 14, 2008, in order to determine his competency to proceed to trial. He stated that the evaluation “failed to reveal evidence that [Defendant] was showing any signs or symptoms of suffering from any major psychiatric disorder.” He further stated that Defendant was able to give adequate responses to questions concerning the Bennett criteria for competency to proceed.
In their May 14, 2008 report, Dr. Salce-do and Dr. Richard Richoux both recommended that the trial court find Defendant competent to stand trial. The report specifically noted that Defendant acknowledged a history of arrests and polysub-stance abuse; nevertheless, Defendant’s responses to questions concerning the Bennett criteria indicated that he “fully understands the charges and proceedings against him, and is able to assist his attorney in preparing his defense.”
On cross-examination, Dr. Salcedo testified that neither Defendant nor his counsel had informed him of prior treatment for mental health, and if he had been aware of prior treatment, it would have been mentioned in his report. Dr. Salcedo remembered that Defendant had no trouble communicating with him during the evaluation. Dr. Salcedo also stated that it would not *930 have affected his findings had he later learned Defendant was taking medicine to assist him with insomnia, because insomnia is not a major psychiatric disorder which would have impaired his ability to meet the Bennett criteria.
On re-direct examination, Dr. Salcedo admitted that prior mental health records were not particularly relevant to his inquiry as to whether Defendant met the Bennett criteria. He explained that he would “sometimes” receive records of an individual’s history of mental health treatment. However, he further explained that due to the narrow scope of a competency examination, “it’s not of particular usefulness to go looking for psychiatric treatment records from the past,” because 112the individual is being evaluated on their present ability to meet the Bennett criteria.
At the conclusion of Dr. Salcedo’s testimony, the matter was submitted. Relying on the doctors’ report and the stipulation, the trial court ultimately found that Defendant was “competent to stand trial, able to assist his attorney in fact-finding, in witnesses [sic] of that trial.”[4]
Notably, the defense admitted no evidence of prior mental health issues and voiced no objection to the trial court’s retroactive finding of competence to proceed to trial; rather, counsel responded, “Very well, your honor.” Significantly, Defendant proceeded to trial after stipulating to the report, and, subsequently, elicited no evidence to the contrary at the nunc pro tunc hearing. (See State v. Anderson, 06-2987 (La.9/9/08); 996 So.2d 978, 993, cert. denied, — U.S. —, 129 S.Ct. 1906, 173 L.Ed.2d 1057 (2009), where the Louisiana Supreme Court noted that the defense voiced no objection to the trial court’s finding of competence to proceed to trial, yet still addressed the merits of the competency ruling.) Further, by the time the trial court made a competency ruling, he had an opportunity to observe Defendant’s demeanor, firsthand, during the motion to suppress[5] and under the stress of trial, and apparently detected no mental difficulties to warrant intervention. See Anderson, supra, where the Court considered the fact that the trial court had the ability to observe defendant during the stress of trial and apparently detected no mental difficulties to warrant intervention as a significant factor in reviewing his pretrial competency ruling.
| ^Considering the totality of the circumstances and the trial court’s personal observations of Defendant, we find that the record supports the trial court’s findings that Defendant was aware of the charges and proceedings against him, the consequences of these charges, and was able to assist in his defense. Thus, Defendant failed to prove his incompetency to stand trial by a preponderance of the evidence.[6]
*931 Finally, Defendant argues that his trial counsel was ineffective for failing to present evidence of his previous mental health issues. While making this argument, he also acknowledges that he wishes to reserve the right to raise this claim on application for post-conviction relief, where it is more appropriately raised.
As Defendant correctly states, a claim for ineffective assistance of counsel is most appropriately addressed through an application for post-conviction relief, filed in the trial court where a full eviden-tiary hearing can be conducted, rather than direct appeal. State v. McIntyre, 97-876 (La.App. 5 Cir. 1/27/98); 708 So.2d 1071, 1075, writ denied, 98-1032 (La.9/18/98); 724 So.2d 753. However, when the record contains sufficient evidence to rule on the merits of the claim and the issue is properly raised by assignment of error on appeal, it may be addressed in the interest of judicial economy. State v. Peart, 621 So.2d 780, 787 (La.1993); McIntyre, supra.
In this case, we conclude that defendant’s allegations of ineffectiveness would be better addressed by an application for post-conviction relief where an evidentiary hearing can be conducted. See State v. Price, 43,789 (La.App. 2 Cir. 1/14/09); 2 So.3d 578, where the court concluded that an ineffective assistance of | ucounsel claim alleging failure to submit evidence of defendant’s incompetence to stand trial was more properly raised in an application for post-conviction relief and would not be considered on appeal from conviction.

ERROR PATENT DISCUSSION

Defendant requests an error patent review. This Court routinely reviews the record for errors patent in accordance with LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5th Cir.1990), regardless of whether defendant makes such a request. However, this Court performed an error patent review of the original record in this case at the time of Defendant’s first appeal. Thus, this error patent review was limited to the new proceedings conducted on remand. See State v. Bozeman, 06-679 (La.App. 5 Cir. 1/30/07); 951 So.2d 1171, writ denied, 04-0497 (La.7/2/04); 877 So.2d 141.
A review of the instant record does not reveal any patent errors.
DECREE
For the foregoing reasons, we affirm Defendant’s conviction and habitual offender sentence.

CONVICTION AND SENTENCE AFFIRMED

. This Court consolidated Defendant’s first appeal and second appeal (09-KA-371 and 09-KA-372).

. It is noted that although this Court reserved issues pretermitted during the first and second consolidated appeal, Defendant does not raise these issues in either his counseled or pro se brief. Under Rule 2-12.4 of the Uniform Rules, Courts of Appeal, all specifications or assignments of error must be briefed, and the appellate court may consider as abandoned any specification or assignment of error that has not been briefed. State v. Tran-chant, 10-459 (La.App. 5 Cir. 11/23/10); 54 So.3d 730, 735, writ denied, 10-2821 (La.4/29/11); 62 So.3d 108.

. These pro se assignments will be discussed simultaneously in this opinion.

. Additionally, just prior to trial on August 21, 2008, Defendant stipulated to the doctors’ report.

. Prior to trial on August 21, 2008, the trial court held a motion to suppress hearing where Defendant testified and could clearly recount his version of the facts to assist in his defense. Defendant testified that he retrieved the victim’s wallet from the ground, and he was essentially beaten until he changed his statement to reflect that he took the wallet out of the victim’s vehicle. He also had a clear recollection of his past convictions.

.It is noted that Defendant also argues that the trial court’s erroneous ruling prevented him from presenting an insanity defense. However, this argument is untenable. Even assuming that the trial court's ruling was erroneous, it did not prevent Defendant from presenting an insanity defense as it only addressed Defendant's competency to stand trial, not his competency at the time of the offense.