CARAWAY, J.
| Ronald Lee Blanche was found guilty of attempted manslaughter in violation of La. R.S. 14:31 and La. R.S. 14:27, and possession of a firearm by a convicted felon in violation of La. R.S. 14:95.1. Blanche received consecutive sentences of 20 years at hard labor for attempted manslaughter and 15 years at hard labor, without benefit of probation, parole, or suspension of sentence, plus a $3,000 fine for the firearm conviction. Blanche appeals his conviction and sentence. We affirm.

Facts

On February 24, 2006, Donald Lee Blanche was charged by bill of information with the attempted second degree murder of Niesha Turner and possession of a firearm by a convicted felon,[1] for his actions on January 28, 2006, when Blanche shot Turner. The evidence presented by the state at the November 2010 trial was as follows.
Niesha Turner, the victim, testified that in 2006 she was living at 503 Cole Avenue, in Monroe, Louisiana, with Blanche and their biological child. Except for a three-to-four month stay at her aunt’s Dallas, Texas, home in late 2005, she and Blanche had lived together about six to seven years.
Turner stated that on January 27, 2006, Blanche told her she should stay at her cousin’s house down the street while he got the car repaired and |2that he would pick her up when he was done. She fell asleep at her cousin’s house and awoke at 6:00 a.m. the following morning to find that Blanche never came to get her. Turner walked back to her home, which was just around the corner, to get some clothes for herself and her daughter.
Upon arrival, she noticed an unfamiliar car in the driveway which had the keys in the ignition, open doors, and a purse and women’s clothing on the backseat. Turner had house keys, but discovered the front and rear doors were locked from the inside. When no one answered her knocks at either door, she went around to the bedroom window. Turner could not see into the bedroom, but could hear Blanche talking. She yelled for him to let her in so that she could get her clothes. Finally, she broke the window in, at which point she could see a woman sitting on the bed. She also saw Blanche, who was wearing camouflage clothes, reach under the mattress. Blanche pulled out a gun, pointed it at her and shot her in the neck. Turner knew that Blanche kept a gun under the mattress but she did not immediately realize that she had been shot and she continued yelling at Blanche. After discovering the blood on her neck and that she had *512 been shot, she left in the car that was sitting in the driveway in an attempt to drive to her cousin’s house. After erratic driving, she arrived at her cousin’s house, where her family called for an ambulance.
Turner was hospitalized for three weeks. The bullet remains in her shoulder, lodged between two bones, because the doctors were concerned that an attempt to retrieve the bullet might leave her paralyzed on her left side. The doctors initially stitched her chin to her chest to prevent her from |smoving her head. She maintained this position for two weeks before the stitches were removed.
On cross-examination, Turner testified that Blanche responded to her demands that she be allowed to get her clothes by saying that she was not going to get anything.
Officer James Coates, assigned to the patrol division of the Monroe Police Department, answered the dispatch call to Davis’ house on January 28, 2006. He found Turner lying on the carport at Davis’ house and observed that she appeared to have a gunshot wound to the neck. As he approached Turner, she twice said to him that Don Blanche had shot her.
Corporal Dennis Wall of the Monroe Police Department also responded to the dispatch call to Davis’ residence that morning. From there, he proceeded to Turner and Blanche’s home on Cole Avenue and en route observed a black male and a black female running from the area. He stopped the female, but the male continued running. Officer Wall was able to stop the male a short time later and noticed that the man, identified as Donald Blanche, had blood on him. Neither person was carrying a gun when stopped.
Investigating the crime scene, Captain Richard Jones and another officer located a handgun at the rear of a residence at 507 Cole Avenue, two houses down from Turner and Blanche’s house on the same side of the street. The gun was found under the edge of the raised house, behind a pier and wrapped in a white towel. The handgun contained five live rounds and one spent case. No usable prints were found on the handgun.
[¿Detective Benjamin Baw was assigned to investigate the shooting. He found broken glass on both the inside and outside of the broken bedroom window of Turner and Blanche’s home. He also found blood on the curtain at the front door, “like somebody had grabbed the doorknob and the curtain at the same time to open the door.”
Baw testified that Blanche and the female, identified as Shalonda Hill, had been taken to the police station for questioning. Blanche had a cut on his left hand and was wearing tan pants over a pair of blood-smeared camouflage pants. Baw identified a picture taken that day of Blanche’s cut hand but had no knowledge of how or when the cut occurred.
Baw also spoke with Hill, who advised him that the gun used to shoot Turner was concealed at the residence at 507 Cole Avenue. Ballistic tests were not done because the bullet remained lodged in the victim. Baw arrested Blanche for the attempted second degree murder of Turner.
After the state rested, Hill testified for the defense. She testified that she had known Blanche for about five years and they have children together. At the time of trial, she was Blanche’s fíanceé. On January 28, 2006, she and Blanche were the only people at the house at 503 Cole Street. Hill said they had just come in from partying and went to asleep. She heard a noise at the window, as if someone was trying to break in, and she tried to wake Blanche up. She heard the sound of the screen breaking and then the window breaking and she hurried to get dressed. *513 Hill said that at no time during the event did she or Blanche have a gun, nor did she ever see Blanche with a gun in the house. They left the house so that no one would lficome inside and try to do anything to them. She was going to call the police but her cell phone was dead. She said she first saw the police when she was waiting for Blanche to come back from calling the police. Hill said that she and Blanche did not run, they were just leaving to call the police. She said the police did not chase Blanche.
Hill said she did not recall Blanche ever having a gun in his possession at any time during this event and she did not recall hearing a gunshot. She said she only heard a noise and she looked outside to find her car gone.
On cross-examination, Hill testified that the car was registered to Frederick McMillan, her friend, with whom she was living in January 2006. Hill said that she and Blanche got engaged about a year or two before the trial. On January 27, 2006, she and Blanche had gone out to a club. They were intoxicated and did not get in until about 3:00 a.m. She said she heard a noise outside and she went to the bathroom to get dressed. Then she heard a “pop.” Hill denied that she told the police she saw Blanche pull a gun from the bed or that she saw him walking toward the broken window with a gun. Nor did she admit to hearing anyone arguing at the broken window of Turner and Blanche’s house. Hill ultimately admitted that she told police that Blanche had a gun wrapped in a small towel and that they went to a house where Blanche hid the gun.
Detective Baw was recalled by the state to the stand and testified that Hill told him that she saw Blanche retrieve a gun from the bed and walk with it toward the broken window.
1,;After this testimony, both sides rested. On November 17, 2010, by a vote of 10-2, the jury returned a responsive verdict of attempted manslaughter, and by a vote of 11-1, found Blanche guilty as charged of possession of a firearm by a convicted felon. On April 14, 2011, Blanche was sentenced as noted above to consecutive maximum sentences on both counts of conviction. After the denial of a timely filed motion to reconsider sentence, this appeal followed.

Discussion

In his first assigned error, Blanche argues that the state failed to show that he had specific intent to kill Turner and was simply trying to protect his home.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Tate, 01-1658 (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Carter, 42,894 (La.App.2d Cir.1/9/08), 974 So.2d 181, writ denied, 08-0499 (La.11/14/08), 996 So.2d 1086. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 05-0477 (La.2/22/06), 922 So.2d 517; State v. Dotie, 43,819 (La.App.2d Cir.1/14/09), 1 So.3d 833, writ denied, 09-0310 (La.11/6/09), 21 So.3d 297. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole *514 or in part. State v. Eason, 43,788 (La.App.2d Cir.2/25/09), 3 So.3d 685, writ denied, 09-0725 (La.12/11/09), 23 So.3d 913; State v. Hill, 42,025 (La.App.2d Cir.5/9/07), 956 So.2d 758, writ denied, 07-1209 (La.12/14/07), 970 So.2d 529.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Speed, 43,786 (La.App.2d Cir.1/14/09), 2 So.3d 582, writ denied, 09-0372 (La.11/6/09), 21 So.3d 299; State v. Parker, 42,311 (La.App.2d Cir.8/15/07), 963 So.2d 497, writ denied, 07-2053 (La.3/7/08), 977 So.2d 896.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Speed, supra; State v. Allen, 36,180 (La.App.2d Cir.9/18/02), 828 So.2d 622, writs denied, 02-2595 (La.3/28/03), 840 So.2d 566, 02-2997 (La.6/27/03), 847 So.2d 1255, cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004).
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Gullette, 43,032 (La.App.2d Cir.2/13/08), 975 So.2d 753; State v. Burd 40,480 (La.App.2d Cir.1/27/06), 921 So.2d 219, writ denied, 06-1083 (La.11/9/06), 941 So.2d 35.
In relevant part, the offense of manslaughter includes the following conduct, defined in La. R.S. 14:31 as:
(1)A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection;
In order to obtain a conviction for attempted manslaughter, the state must prove beyond a reasonable doubt that the defendant possessed the specific intent to kill. State v. Mitchell, 39,305 (La.App.2d Cir.2/17/05) 894 So.2d 1240, writ denied, 05-0741 (La.6/3/05), 903 So.2d 457; State v. Hutcherson, 34,540 (La.App.2d Cir.4/4/01), 785 So.2d 140; State v. Taylor, 96-320 (La.App. 3d Cir.11/6/96), 683 So.2d 1309, writ denied, 96-2828 (La.6/20/97), 695 So.2d 1348.
Specific intent is that state of mind that exists when the circumstances indicate the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1). Specific intent may be inferred from the circumstances of the offense and the defendant’s act of ^deliberately pointing a gun and firing it at a person. State v. Williams, 44,977 (La.App.2d Cir.1/27/10), 32 So.3d 902, writ denied, 10-0368 (La.9/24/10), 45 So.3d 1071; State v. Freeman, 45,127 (La.App.2d Cir.4/14/10), 34 So.3d 541, writ denied, 10-1043 (La.11/24/10), 50 So.3d 827.
After viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. If believed, *515 Turner’s testimony established when she broke the window of the home and saw Blanche with another woman, the two exchanged angry words, thus establishing that Blanche knew it was Turner who was outside the window. With that knowledge, Blanche pulled a gun on the defenseless Turner and shot her in the neck. Blanche’s specific intent to kill may be inferred from his act of pointing a gun and firing at Turner. Blanche’s argument that he thought the person pounding on the bedroom window and yelling at him through the •window was a stranger attempting to burglarize the house was obviously not believed by the jury. The rejection of this home protection claim was reasonable considering Turner’s testimony of her long relationship with Blanche and that she resided in the house with Blanche and their child and possessed her own key to the house. This relationship was not disputed. Moreover, from the evidence showing Blanche’s hiding of the gun and running from police, the jury could have further inferred Blanche’s guilt. State v. Fuller, 418 So.2d 591 (La.1982); State v. Wade, 33,121 (La.App.2d Cir.5/15/00), 758 So.2d 987, writ denied, 00-2160 (La. 9/28/01), 797 So.2d 684; State v. Emerson, 31,408 (La.App.2d Cir.12/9/98), 722 So.2d 373, writ denied, 99-1518 (La.10/15/99), 748 So.2d 470; State v. Bellamy, 599 So.2d 326 (La.App. 2d Cir.1992), writ denied, 605 So.2d 1089 (La.1992). From all of the evidence before it, the jury could have reasonably found proof of specific intent to kill. Thus, this assignment of error has no merit.
In his second assignment of error, Blanche contends that Turner’s statement to Officer Coates that Blanche shot her is inadmissible hearsay evidence. Blanche argues that Turner’s statement was not a spontaneous reaction to the shooting because it occurred over 30 minutes after she was shot, an amount of time sufficient for Turner to have reflected upon the shooting.
During Officer Coates’ testimony, defense counsel objected to his testimony that Turner told him that Blanche had shot her as hearsay because too much time had passed aftér the shooting for the statements to qualify as excited utterances. The trial court overruled Blanche’s objection.
Hearsay is a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted. La. C.E. art. 801(C). Hearsay is inadmissible except as provided by law. La. C.E. art. 802.
One of the exceptions to the hearsay rule is the excited utterance exception. An excited utterance is a statement by the declarant, about a startling event or condition, made while under the stress or excitement |n caused by that event or condition. La. C.E. art. 803(2).[2] The statement must be a spontaneous reaction to this event or condition, which must have been so startling as to render the declarant’s normal reflective thought process inoperative. State v. Richardson, 46,360 (La.App.2d Cir.6/22/11), 71 So.3d 492. The time that lapsed between the event and the statement is the most important factor in determining whether the statement was made under the stress of the event, as the court considers whether the declarant could have calmed down enough during that time for reflective thought to be restored. Id.
*516 Additional factors that may indicate that a statement was the result of a reflective thought are evidence that the statement was self-serving or made in response to an inquiry, or expansion of the excited utterance beyond a description of the event and into past or future facts, and proof that, between the event and the statement, the declarant performed tasks that required a reflective thought process. However, these factors do not automatically justify exclusion. State v. Griffin, 45,045 (La.App.2d Cir.1/27/10), 30 So.3d 1039, writ denied, 10-0447 (La.9/17/10), 45 So.3d 1043.
Admission of even hearsay testimony is harmless error where the effect is merely cumulative or corroborative of other testimony adduced at trial. State v. Dupree, 41,658 (La.App.2d Cir.1/31/07), 950 So.2d 140, writ denied, 07-0439 (La.10/12/07), 965 So.2d 396.
|12At the time of her statement to Officer Coates, Turner had been shot in the neck by her boyfriend about 40 minutes earlier and had lost consciousness several times as she attempted to drive for help. She had hit the ditch multiple times along the way and was found lying in the carport, bleeding. Being shot in the neck was certainly a startling event for which the lapse of a mere 40 minutes was insufficient time for Turner to calm down and regain her reflective thought. Her outburst to Officer Coates as he approached her and before he could even ask her any questions can reasonably be considered spontaneous and not a narrative of the events or a reflective process in response to an interview. The circumstances indicate that this statement was an excited utterance and admissible under the exception to the hearsay rule.
Furthermore, because Turner earlier testified to the same facts at trial, any error in the admission of the officer’s statements was harmless error, as cumulative or corroborative of the victim’s own testimony. This assignment of error is without merit.
Finally, Blanche argues that the trial court erred in imposing the maximum sentences for attempted manslaughter, in failing to properly consider mitigating factors such as his childhood head injury or the “minor nature” of his offenses, in considering his prior arrests in imposing both sentences and in imposing consecutive sentences.
A sentence is constitutionally excessive in violation of La. Const, art. I, § 20, if it is grossly out of proportion to the severity of the offense or nothing more than a needless and purposeless imposition of pain and 1 ^suffering. State v. Smith, 01-2574 (La.1/14/03), 839 So.2d 1; State v. Bonanno, 384 So.2d 355 (La.1980); State v. Cunningham, 431 So.2d 854 (La.App. 2d Cir.1983), writ denied 438 So.2d 1112 (La.1983). A sentence is deemed grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice or makes no reasonable contribution to acceptable penal goals. State v. Weaver, 01-0467 (La.1/15/02), 805 So.2d 166; State v. Guzman, 99-1528, 99-1753 (La.5/16/00), 769 So.2d 1158; State v. Robinson, 40,983 (La.App.2d Cir.1/24/07), 948 So.2d 379.
The trial judge is given a wide discretion in the imposition of sentences within the statutory limits, and the sentence imposed by him should not be set aside as excessive in the absence of a manifest abuse of his discretion. State v. Williams, 03-3514 (La.12/13/04), 893 So.2d 7; State v. Thompson, 02-0333 (La.4/9/03), 842 So.2d 330; State v. Hardy, 39,233 (La.App.2d Cir.1/26/05), 892 So.2d 710. A trial *517 judge is in the best position to consider the aggravating and mitigating circumstances of a particular case, and, therefore, is given broad discretion in sentencing. State v. Cook, 95-2784 (La.5/31/96), 674 So.2d 957, cert. denied, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).
As a general rule, maximum or near maximum sentences are reserved for the worst offenders and the worst offenses. State v. Cozzetto, 07-2031 (La.2/15/08), 974 So.2d 665; State v. McKinney, 43,061 (La.App.2d Cir.2/13/08), 976 So.2d 802; State v. Woods, 41,420 (La.App.2d Cir.11/1/06), 942 So.2d 658, writs denied, 06-2768 (La.6/22/07), [14959 So.2d 494, 06-2781 (La.6/22/07), 959 So.2d 494; State v. Grissom, 29,718 (La.App.2d Cir.8/20/97), 700 So.2d 541.
A defendant’s lack of remorse is a proper sentencing consideration. State v. Birch, 43,119 (La.App.2d Cir.3/19/08), 979 So.2d 643; State v. Robinson, 33,921 (La.App. 2d Cir.11/01/00), 770 So.2d 868; State v. Shipp, 30,562 (La.App.2d Cir.4/8/98), 712 So.2d 230, 237, writ denied, 98-1199 (La.9/25/99), 724 So.2d 775.
In selecting a proper sentence, a trial judge is not limited to considering only a defendant’s prior convictions but may properly review all prior criminal activity. State v. Pamilton, 43,112 (La.App.2d Cir.3/19/08), 979 So.2d 648, writ denied, 08-1381 (La.2/13/09), 999 So.2d 1145; State v. Boyte, 42,763 (La.App.2d Cir.12/19/07), 973 So.2d 900, writ denied, 08-0175 (La.6/20/08), 983 So.2d 1272.
Attempted manslaughter, under La. R.S. 14:31 and La. R.S. 14:27, carries a maximum sentence of 20 years. At the time of this offense, the crime of possession of a firearm by a convicted felon carried a maximum sentence of 15 years without benefits and a maximum fine of $5,000.
In this case, the only issue raised by Blanche in his motion to reconsider sentence was a claim that the imposed sentences were excessive. Failure to specify a ground for relief “shall preclude the ... defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal.” La. C. Cr. P. art. 881.1(E); State v. Howard, 38,787 (La.App.2d Cir.8/18/04), 880 So.2d 980; State v. Barnes, 607 So.2d 872 (La.App. 2d Cir.1992). In such a circumstance, this court has held that the [ ],^defendant is relegated to having the appellate court consider the bare claim of constitutional excessiveness. State v. Mims, 619 So.2d 1059 (La.1993); State v. Duncan, 30,453 (La.App.2d Cir.2/25/98), 707 So.2d 164. Thus, Blanche’s sentence review is limited to the bare excessive sentence claim.
Prior to sentencing Blanche, the court noted that it weighed what the evidence and all reports showed to be the individual and specific intent, the degree of involvement and the degree of Blanche’s cooperation with law enforcement and the prosecution. The trial court noted that this was Blanche’s second felony conviction, yet he also had an extensive criminal history that included crimes against the person. Blanche’s criminal history included the following:
• July 25, 1993, Minneapolis, Minnesota, arrest for second-degree assault; outcome undetermined as records could not be located.
• Nov. 1995, Minneapolis, Minnesota, misdemeanor conviction for carrying a weapon without a permit; on April 24, 1996, sentenced to five months in jail with two years of misdemeanor probation. Another weapons charge and a charge of flight from an officer in a motor vehicle were dismissed.
*518 • June 22,1997, Ouachita Parish, Louisiana, arrest for attempted second degree murder. Records show Blanche was arguing with another person who pulled a knife on him, and Blanche responded by pulling a gun and shooting him; charge dismissed.
• January 8, 1998, Ouachita Parish, Louisiana, conviction for possession of cocaine. Blanche pled guilty and was sentenced on October 21, 1998, to five years’ imprisonment at hard labor, suspended, and five years of supervised probation.
• Blanche was arrested twice for violating the terms of his probation, the first time on April 13, 2000, for technical violations of probation. Blanche’s probation was [ 1ficontinued until March 18, 2003, after he was arrested for armed robbery, for stealing beer from a convenience store. The armed robbery charge was dismissed and on April 29, 2003, Blanche pled guilty to misdemeanor theft of goods and was sentenced to serve six months in the parish jail.
• September 29, 2008, arrested for domestic abuse battery of Shalonda Hill. On September 3, 2009, found guilty and sentenced to serve 120 days in parish jail, suspended, with 24 months’ probation, and a fine of $300.
• This probation was revoked on May 2, 2010, when Blanche was arrested for possession of PCP and obstruction of justice (for attempting to hide evidence of the drug possession). On June 29, 2010, a six-member jury found Blanche not guilty of possession of PCP, but guilty as charged of obstruction of justice.[3]
• December 3, 2009, arrest for possession of PCP; prosecution later declined.
The trial court also considered that Turner’s gunshot wound is a permanent injury with bullet fragments lodged in her back which cause her inability to move her left side or lift anything and shortness of breath. Turner will likely require pain medication the remainder of her life and suffered economic loss because she lost her job and home. The court considered that Blanche used a dangerous weapon, a handgun, in the commission of his crime and found no mitigating factors.
The trial court also considered Blanche’s childhood, which Blanche reported was good and free of substance abuse or neglect. He reported that a fall from a stage “messed up his head” and that he has been hospitalized several times for mental health disorders. He dropped out of school and 117never obtained a GED. Blanche denied any and all drug use. He has four children, but pays no child support. He has no job skills or history of employment and does odd jobs or yard work for income.
The court specifically considered that Blanche denied that Turner had been his girlfriend, denied owning a gun or shooting Turner and insisted that Turner was lying. The court noted that Turner reported Blanche had beat her in the past.
Ultimately, the trial court imposed the maximum sentence for both convictions due to Blanche’s involvement in drugs and violence for well over a decade, his pattern of probation violations as well as his lack of remorse and contempt for the law. The emotional and physical pain that Blanche caused Turner, which she will endure for life, was cited as a large factor in the trial *519 court’s sentencing decision. The court also considered that Blanche’s history showed a pattern of increasing severity of crime against persons and that he had benefitted over the years from prosecutors’ leniency in dismissing several charges, resulting in little potential of rehabilitation. The trial court mentioned Blanche’s possession of the gun which was independent of this shooting and that the two events were not part of a common scheme or plan. Further the court considered the consequences, gravity and viciousness of Blanche’s unprovoked actions and that Blanche’s pattern of violence and crimes against the person made him an unusual risk of danger to the public.
Given the seriousness of Blanche’s offense in shooting Turner in the neck and the immediate and lifelong harm inflicted upon the victim, his 11sviolent and extensive criminal history, his lack of remorse and Blanche’s failure to be rehabilitated by previous leniency in sentencing, we find that the maximum sentences imposed for his attempted manslaughter and possession of a firearm by a convicted felon convictions are not grossly disproportionate, nor do they shock the sense of justice. This defendant is the worst type of offender. Under these circumstances, Blanche has failed to show that the trial court abused its discretion in imposing the maximum for either sentence. This assignment of error is without merit.

Decree

For the foregoing reasons, Blanche’s convictions and sentences are affirmed.
AFFIRMED.

. Paul Farr, a deputy clerk with the Ouachita Parish Clerk's Office, produced records showing Blanche's October 21, 1998 guilty plea to possession of cocaine for which Blanche received a suspended sentence of five years at hard labor. Sergeant Rick Fisher, accepted by the trial court as an expert in the field of fingerprint identification, identified Blanche as the same person on fingerprint cards for Blanche's January 28, 2006 arrest and the above mentioned prior conviction.

. This type of evidence may also be classified as non-hearsay because it is part of the res gestae under La. C.E. art. 801(D)(4).

. Blanche was sentenced on May 9, 2011, to serve five years at hard labor, to run consecutive with the sentences imposed on these convictions.