# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 12-1189


STATE OF LOUISIANA

VERSUS

CHRISTOPHER MARSHALL, JR.


**********

APPEAL FROM THE
THIRTY-FIRST JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON DAVIS, NO. CR-58-11-1
HONORABLE C. STEVE GUNNELL, DISTRICT JUDGE

**********

## MARC T. AMY
## JUDGE

**********

Court composed of John D. Saunders, Jimmie C. Peters, and Marc T. Amy, Judges.


**AFFIRMED.**


**Peters, J., dissents and assigns written reasons.**


**Michael C. Cassidy**
**District Attorney**
**Kevin D. Millican**
**Assistant District Attorney**
**Post Office Box 1388**
**Jennings, LA   70546**
**(337) 824-1893**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**Beth Smith Fontenot**
**Louisiana Appellate Project**
**Post Office Box 3183**
**Lake Charles, LA   70602**
**(337) 491-3864**
**COUNSEL FOR THE DEFENDANT/APPELLANT:**
    **Christopher Marshall, Jr.**

AMY, Judge.

The State alleged that, during an altercation, the defendant repeatedly hit the victim in the head with a rock and his girlfriend stabbed the victim, causing serious injury. The State charged the defendant with attempted second degree murder, a violation of La.R.S. 14:30.1 and La.R.S. 14:27. Ultimately, a jury convicted the defendant of the responsive verdict of attempted manslaughter, a violation of La.R.S. 14:31 and La.R.S. 14:27. The trial court imposed a sentence of twenty years at hard labor. The defendant appeals. For the following reasons, we affirm.

## Factual and Procedural Background

This case involves review of the conviction of the defendant, Christopher Marshall, Jr., for attempted manslaughter. Critical to that offense, however, are circumstances surrounding a preceding robbery. The defendant and his girlfriend, Tiffany Saucier, both testified regarding an initial attempt to sell narcotics to the victim, Julian Broussard.[1] According to Ms. Saucier, in attempting to meet Mr. Broussard, she and the defendant were approached by two men who robbed them of the drugs. Ms. Saucier testified she was knocked unconscious by a blow from a gun during the altercation. Ms. Saucier denied that Mr. Broussard was one of the two men involved in the robbery. Mr. Broussard testified that, although he had traveled with another man to meet Ms. Saucier on the night of the robbery, he was intoxicated and had fallen asleep in the back of the vehicle. The defendant, however, testified that a third man was involved in the robbery and that he later learned that the man was Mr. Broussard. The defendant explained that he too was rendered unconscious during the altercation and was robbed of cash.

---

[1] Mr. Broussard testified in this case and denied his involvement in the alleged narcotics transaction.

Approximately two to three weeks later, in the late evening and early morning hours of December 4-5, 2010, the defendant and Ms. Saucier were again together. Ms. Saucier testified that she intended to sell Mr. Broussard hydrocodone pills in order to recoup some of the money she lost in the robbery and which she had borrowed from the defendant. Ms. Saucier and Mr. Broussard exchanged telephone text messages in order to arrange their meeting. However, Ms. Saucier testified that, in driving to meet Mr. Broussard, the defendant "felt like it was a set up." Although they were turning the vehicle to leave, they found Mr. Broussard standing on the railroad tracks near Highway 90.

According to Ms. Saucier, Mr. Broussard entered the back of the car and after he and the defendant exchanged words, the two exited the car and began fighting. The defendant testified at trial that he recognized Mr. Broussard as the man who had robbed him in the prior incident and as the man who had pistol-whipped Ms. Saucier. He explained that he panicked, fearing that Mr. Broussard, now in the back seat, could "shoot [him] in the back of [his] head."

The defendant testified that, during the ensuing fight, Mr. Broussard's movements made him believe that "he was going to pull out that gun that he used to rob [him]." The defendant explained that he fell down after Mr. Broussard "rushed" him and found a rock in his hand. The defendant explained at trial that he began hitting Mr. Broussard with the rock because he "didn't want to die" and he felt that his actions would prevent Mr. Broussard from pulling a gun. At some point, Ms. Saucier became involved in the altercation as well. The record indicates that Mr. Broussard sustained wounds related to the blows inflicted by the defendant and stab wounds inflicted by Ms. Saucier. Although Ms. Saucier denied

2

recollection of stabbing Mr. Broussard, she admitted that she was responsible for inflicting the stab wounds.

The defendant testified that, after Mr. Broussard stopped moving, he instructed Ms. Saucier to return to the car. As they were driving from the scene, the defendant saw that Mr. Broussard was bloodied and was "sitting in the street[.]"

On the morning of December 5th, Mr. Broussard's father found his son covered in blood in his bedroom. He took the victim to the emergency room of Jennings American Legion Hospital where he was treated by Dr. David Hardey. Dr. Hardey explained that Mr. Broussard had apparent and severe head injuries and was disoriented. Although Mr. Broussard was alert or alertable, he was lethargic and intermittently anxious. Dr. Hardey explained that Mr. Broussard was found to have large fractures to his skull and a subarachnoid bleed. Mr. Broussard also had multiple stab wounds. Dr. Hardey explained that the injuries were "absolutely" life threatening.[2]

Deputy Chad Romero of the Jefferson Davis Parish Sheriff's Office testified regarding the resulting investigation which ultimately resulted in the arrests of the defendant and Ms. Saucier. Both were charged with attempted second degree murder. As amended, the bill of information provided that the defendant "did with specific intent to kill or inflict great bodily harm, unlawfully attempt to kill Julian Broussard (a felony) in violation of LSA R.S. 14:30.1 and in violation of LSA R.S. 14:27." The trial court subsequently granted the defendant's motion to sever Ms.

---

[2] Mr. Broussard testified at trial that the only lasting effect of his wounds is an inability to taste. However, his recollection of the night of his beating was limited insofar as he could not recall the events between the time he walked to the vehicle until he awoke in the hospital. He did, however, deny being armed that night.

3

Saucier's charge.[3] Following a January 2012 trial, a jury convicted the defendant of the lesser offense of attempted manslaughter. The trial court imposed a twenty-year, hard-labor sentence and, subsequently, denied the defendant's motion to reconsider sentence.

The defendant appeals, assigning as error that: 1) his right to a fair trial was violated by the inclusion of the phrase "or to inflict great bodily harm" in the bill of information and in the trial court's jury instructions; 2) that his trial counsel was ineffective for failing to object to those violations; 3) that the evidence was insufficient to support his conviction; and 4) that his sentence is unconstitutionally excessive.

## Discussion

*Errors Patent*

Having reviewed this matter for errors patent on the face of the record, we find no errors patent.

*Sufficiency of the Evidence*

The jury rejected the charged offense of attempted second degree murder and convicted the defendant of the responsive verdict of attempted manslaughter. In this assignment, the defendant notes that, under the scenario presented, the State was required to prove beyond a reasonable doubt that he had the specific intent to kill Mr. Broussard. He argues that the evidence was insufficient in this regard.

Louisiana Revised Statutes 14:31(A)(1) provides that manslaughter is "[a] homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden

---

[3] At trial, Ms. Saucier testified that, pursuant to a plea agreement, she had entered a guilty plea to attempted manslaughter.

passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection." As the underlying conviction was for attempted manslaughter, the State was required to prove that the defendant possessed a specific intent to kill. *See State v. Taylor*, 96-320 (La.App. 3 Cir. 11/6/96), 683 So.2d 1309, *writ denied*, 96-2828 (La. 6/20/97), 695 So.2d 1348. Louisiana Revised Statutes 14:10(1) provides that "[s]pecific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act."

On review, an appellate court considers a sufficiency claim under the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979). Thus, an appellate court determines whether, based on the evidence presented at trial, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Strother*, 09-2357 (La. 10/22/10), 49 So.3d 372 (quoting *Jackson*, 99 S.Ct. at 2789). In doing so, the appellate court considers the evidence in the light most favorable to the prosecution. *State v. Bryant*, 12-233 (La. 10/16/12), 101 So.3d 429.

Our review of the record, under the *Jackson* standard, reveals support for the jury's conclusion that the defendant had the specific intent to kill Mr. Broussard. First, we point out that it is unquestioned that the defendant admitted his identity as the perpetrator who struck Mr. Broussard. He asserts, however, that the evidence only reflects that he acted in fear for his personal safety. We find no merit in this assertion as the jury could have found intent to kill demonstrated by the circumstances of the offense.

5

Notably, the defendant admitted repeatedly striking Mr. Broussard in the head with a rock used as a weapon. Dr. Hardey described the resulting wounds as life-threatening. Photographs of these wounds were published to the jury. Further, both the defendant and Ms. Saucier testified that, although he was bloodied and on the ground, the two left him at the scene of the altercation, despite his serious condition. When viewed in the light most favorable to the State, these circumstances surrounding the offense could support the view that the defendant acted with specific intent to kill. Additionally, and with knowledge of these circumstances, the jury heard Deputy Romero's investigative interview of the defendant in which he admitted his role in the beating of Mr. Broussard. At trial, and although the defendant testified that he acted in fear for his safety, the State extensively questioned the defendant regarding his interview statement. In particular, the State questioned the defendant regarding his interview statement that, on the night of the offense, he had recognized Mr. Broussard as being involved in the robbery and that he struck him approximately ten times with a rock. Although the defendant denied at trial that he intended to kill Mr. Broussard, the jury was able to assess that testimony in comparison to the taped confession. Finally, the State entered into evidence a letter written by the defendant to Ms. Saucier while both were awaiting trial. In the letter, the defendant stated:

> I'm tellin you don't take no [] plea go to trial all you gotta say is he attacked you and he was tryin to rob us for a s[e]cond[] time everything was out of defense that dude got a record[] for that s--- we ain't got no record[] the only time we gon do is in here but you lightweight f----- that up[.]

(Expletives deleted.) The jury could have found this evidence supportive of the view that, upon initial confession, the defendant truthfully explained that he acted in response to recognizing Mr. Broussard as the alleged perpetrator of the prior

robbery. We do not disturb the jury's credibility assessment here, nor do we find that the record requires a determination that the defendant acted in fear of his own safety. Instead, we find that the jury's determination that the defendant acted with specific intent to kill Mr. Broussard is supported by the record.

This assignment lacks merit.

*Bill of Information and Jury Instructions*

As discussed above, the State was required to prove that the defendant had the specific intent to kill Mr. Broussard with regard to either a charge of attempted second degree murder or the lesser offense of attempted manslaughter. *See Taylor*, 683 So.2d 1309. *See also State v. Hongo*, 96-2060 (La. 12/02/97), 706 So.2d 419. In this assignment of error, the defendant questions the bill of information's allegation that the defendant "did with specific intent to kill *or inflict great bodily harm,* unlawfully attempt to kill" Mr. Broussard. (Emphasis added.) The defendant notes that the bill was read to the jury both at the opening of the trial and at the time of the trial court's closing instructions to the jury. Additionally, the defendant suggests that, in the trial court's references to the definition of attempted second degree murder, the charged offense, the jury was erroneously informed of the "or inflict great bodily harm" aspect of the charge. These errors, the defendant contends, were not harmless and require a new trial. Additionally, the defendant argues that his trial counsel was ineffective for failing to object to the bill of information and instructions.

In *State v. Cavazos*, 610 So.2d 127, 128 (La.1992), the Louisiana Supreme Court considered a case in which the bill of information for attempted second degree murder included the phrase "*or inflict great bodily harm . . . .*" However, and although the bill of information was read to the jury, the opening statements by

7

the State and the defense counsel referred to specific intent to inflict great bodily harm, and the trial court's charge to the jury included the phrase in its definition of second degree murder, the supreme court found no due process basis for setting aside the conviction. *Id.* Instead, the supreme court explained:

> A substantial probability that jurors may have convicted the defendant under an incorrect definition of the crime justifies setting aside a conviction on due process grounds even in the absence of a contemporaneous objection. *See State v. Williamson*, 389 So.2d 1328 (La.1980). Nevertheless, a prosecutor's misstatements of the law during voir dire examination, or in his opening and closing remarks, do not require reversal of a defendant's conviction if the court properly charges the jury at the close of the case. *State v. Holmes*, 388 So.2d 722 (La.1980); *State v. Shilow*, 252 La. 1105, 215 So.2d 828 (1968).

> We do not consider the misstatements of law from any source in this case so pervasive that the jurors could not adhere to their charged duty "to accept and to apply the law as given by the court...." La.C.Cr.P. art. 802(2). While the trial court included a definition of second degree murder in its general charge, the court explicitly instructed jurors that a conviction for attempted second degree murder required a finding that the defendant had the specific intent to kill the victim. The court prefaced that instruction with the admonition that "[a]s jurors elected and sworn in this case, you are the judges of both the law and the facts in relation to the guilt or innocence of the accused, but you are required to accept the law, as given to you by the court, to be the correct law applicable to this case."

*Id.* at 128-129.

In this case, the trial court correctly charged the jury on the offense of attempted second degree murder, the charged offense. The trial court stated:

> The defendant is charged with attempting to commit second degree murder. Second degree murder is the killing of a human being when the offender has a specific intent to kill.

> A person who has a specific intent to commit a crime and who does an act for the purpose of and tending directly toward accomplishing his object is guilty of an attempt to commit the crime intended. It is immaterial whether, under the circumstances, the defendant would have actually accomplished his purpose.

8

> Mere - - mere preparation to commit a crime is not sufficient to constitute an attempt.
>
> Thus, in order to convict the defendant of attempted second degree murder, you must find: One (1), that the defendant had the specific intent to commit the crime of second degree murder; and two (2), the defendant did an act for the purpose of and tending directly toward the commission of the crime of second degree murder.

Given this instruction and the supreme court's guidance in *Cavazos*, 610 So.2d 127, we find that the defendant's complaint regarding the bill of information does not require correction on review. Rather, the proper charge, as provided by the trial court cured the defect alleged by the defendant.

Neither do we find merit in the defendant's contention that his trial counsel was ineffective by failing to object to the bill of information. On this point, the defendant must demonstrate that, not only was his attorney's performance deficient, but that he was prejudiced by that error. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). For the reasons cited above, we have determined that the defendant's concern regarding the bill of information was cured by the trial court providing proper instruction to the jury. We have also determined, above, that the jury was provided with sufficient evidence to support the verdict returned. Accordingly, the defendant has failed to sustain his burden of demonstrating that his counsel's assistance was deficient.

This assignment lacks merit.

*Sentence*

In his final assignment, the defendant contends that the trial court erred in imposing a twenty-year, hard-labor sentence. The defendant contends that the imposition of the maximum sentence applicable to the conviction is excessive in light of the circumstances of this case. *See* La.R.S. 14:31 and La.R.S. 14:27.

9

Pursuant to La.Const. art. I, § 20, "[n]o law shall subject any person to . . . cruel, excessive, or unusual punishment." In reviewing a defendant's claim of excessive sentence, an appellate court considers whether the penalty is so grossly disproportionate to the severity of the crime as to shock the sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, thus, only a needless infliction of pain and suffering. *State v. Smith*, 01-2574 (La. 1/14/03), 839 So.2d 1. In imposing sentence, the trial court has broad discretion and, absent a manifest abuse of that discretion, a reviewing court may not set aside a sentence. *Id.* Importantly, the appellate court does not consider whether another sentence may have been more appropriate, but instead considers only whether the trial court abused its broad sentencing discretion. *Id. See also* La.Code Crim.P. art. 881.4(D), which provides that: "The appellate court shall not set aside a sentence for excessiveness if the record supports the sentence imposed."

Here, the trial court issued written reasons for ruling, remarking on the defendant's personal, educational, and work-life circumstances. The trial court took "note of the fact" that the defendant was only twenty-two years of age and that this was his first felony conviction. However, the trial court cited a variety of aggravating factors contained within La.Code Crim.P. art. 894.1 "that require a lengthy term of incarceration[.]" In particular, the trial court explained:

> your conduct during the commission of this offense manifested deliberate cruelty to the victim; you used actual violence in the commission of the offense; the offense resulted in significant permanent injury or significant economic loss to the victim or his family; and you used a dangerous weapon in the commission of the offense. The Court believes that these factors as well as the fact that you are in need of correctional treatment in a custodial environment should be reflected in your sentence. Any lesser sentence would deprecate from the seriousness of your crime.

Additionally, in imposing sentence at the hearing, the trial court explained that:

> I must note that, in listening to the testimony, you and Ms. Saucier both testified that you left Mr. Broussard - - excuse me, yes, you left Mr. Broussard on the road after you had - - after he [had] been stabbed and been beaten in the head with a blunt object. You drove away from him. You neither called 911. You called no medical assistance for him. You drove away, and, therefore, the Court is going to sentence you to the Department of Corrections, State of Louisiana, to be imprisoned at hard labor for a period of twenty (20) years.

After review of the record, we find no abuse of the trial court's discretion in its imposition of the sentence. Rather, the defendant violently and repeatedly struck the victim in the head with a rock, leaving him with life threatening wounds as testified to by the treating emergency room physician. Additionally, multiple stab wounds were simultaneously inflicted on the defendant by his girlfriend, Ms. Saucier. As pointed out by the trial court, the defendant left the victim in a battered and bloodied state without further assistance. The trial court was made aware of the brutality of the offense given photographic evidence of the victim's physical condition when he presented at the hospital, of the bloody crime scene, and of the bloody condition of the home where the victim was found by his father. Additionally, this offense occurred as part of a larger background of illegal drug transactions. Accordingly, we find no abuse of the trial court's discretion in finding that "[a]ny lesser sentence would deprecate from the seriousness of [the defendant's] crime."

Neither do we find persuasive the defendant's contention that the facts of this case dictate a lesser sentence in comparison to those cases in which the maximum sentence was imposed. *See e.g.*, *State v. Monceaux*, 12-599 (La.App. 3 Cir. 11/7/12), _ So.3d _; *State v. Bell*, 12-195 (La.App. 3 Cir. 6/6/12), 91 So.3d 1279, *writ denied*, 12-2363 (La. 3/15/13), _ So.3d _; *State v. Blanche*, 47,014

11

(La.App. 2 Cir. 4/25/12), 92 So.3d 508; *State v. Maze*, 09-1298 (La.App. 3 Cir. 5/5/10), 36 So.3d 1072; and *State v. Jones*, 01-630 (La.App. 4 Cir. 3/20/02), 814 So.2d 623, *writ denied*, 02-1111 (La. 11/15/02), 829 So.2d 424. Rather, we are mindful of the supreme court's instruction that: "While comparisons with other similar cases 'is useful in itself and sets the stage,' the focus of sentence review remains on the character and propensities of the offender and the circumstances of the offense." *State v. LeBlanc*, 09-1355, p. 10 (La. 7/6/10), 41 So.3d 1168, 1173 (citations omitted) (quoting *State v. Telsee*, 425 So.2d 1251, 1254 (La.1983)). In this case, and upon consideration of the other offenses involved in the cases cited by the defendant, the circumstances of the present offense support the trial court's imposition of sentence.[4]

This assignment of error lacks merit.

## DECREE

For the foregoing reasons, the conviction and sentence of the defendant, Christopher Marshall, Jr., for attempted manslaughter are affirmed.

**AFFIRMED.**

---

[4] We note that the defendant also contends that Ms. Saucier received a fifteen-year sentence for her role in this matter. He argues that the disparity in the sentences must be considered as a factor in this review for excessiveness. In addition to the fact that Ms. Saucier's sentence is not contained within this record, we again note that the defendant's role in this case is clear. We further point out that the record indicates that Ms. Saucier accepted a plea agreement in this matter wherein she agreed to testify in support of the State's prosecution of the defendant.

**12-1189**

**STATE OF LOUISIANA**
**COURT OF APPEAL, THIRD CIRCUIT**


**STATE OF LOUISIANA**

**VERSUS**

**CHRISTOPHER MARSHALL, JR.**

**PETERS, J., dissenting.**

I respectfully disagree with the majority's affirmation of the defendant's conviction for attempted manslaughter pursuant to La.R.S. 14:31 and La.R.S. 14:27. I would vacate the defendant's conviction and sentence; enter a conviction for aggravated battery, a violation of La.R.S. 14:34; and remand the matter to the trial court for sentencing on that offense.

My disagreement is not with the majority's determination of the facts as established by the trial court record. Instead, I find that the facts do not rise to the level of establishing beyond a reasonable doubt that the defendant had a specific intent to kill the victim. I do find, however, that the force or violence imposed on the person of the victim constituted a battery as defined by La.R.S. 14:33, and the use of the rock as a weapon caused the battery to rise to the level of an aggravated battery as defined by La.R.S. 14:34. Furthermore, while the initial force or violence used by the defendant could have been classified as justifiable in defense of himself under La.R.S. 14:19, the defendant's subsequent actions in using the rock as a weapon exceeded the level of force or violence reasonable and apparently necessary to prevent the forcible offense against him. *Id.*